May 9, 2024

BY ECF

Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *Phoenix Ancient Art, S.A.  v. Qatar Investment and*
         *Project Holding Co., W.L.L. et al.* (No. 24-cv-01699 (GHW)

Dear Judge Woods:

We represent Plaintiffs Phoenix Ancient Art, S.A. ("Phoenix") and Petrarch LLC dba Electrum ("Electrum") in the above-referenced action (the "Action").  We write in response to the letter dated May 6, 2024 to the Court from counsel for Defendant Qatar Investment and Project Holding Co., WLL ("QIPCO") requesting a pre-motion conference with respect to its proposed motion to dismiss Plaintiffs' claims.  For the reasons discussed below, we oppose QIPCO's proposed motion.

**The Sale and Purchase Agreements on Which QIPCO Relies**
**For Their Forum Selection Clauses Have No Applicability to the Present Action**

QIPCO's *forum non conveniens* argument rests upon QIPCO's mischaracterization of the nature of Plaintiffs' claims and its mistaken reliance on two contracts which, contrary to QIPCO's contention, are not implicated in the Action and may not serve, through their forum selection clauses, to deprive Plaintiffs of their chosen forum, New York, which is the most appropriate forum to resolve the claims in the Action. Those two contracts, Sale and Purchase Agreements (the "SPAs") evidencing QIPCO's purchase of two antiquities from Plaintiffs in 2013 and 2014, a statuette of Nike (the "Nike") and a marble "Head of Alexander" (the "Alexander Head"), are not the agreements out of which the claims in the Action arise. QIPCO erroneously asserts that the claims in this Action arise out of the parties' disputes over the "authenticity" of the Nike and the Alexander Head which are being litigated in UK court. In fact, the issues in the Action have nothing to do with the authenticity of any object and therefore do not depend on the outcome of the UK legal proceedings.

As detailed in paragraphs 32-34 of the First Amended Complaint (the "Complaint"), the Exchange Agreement was a contract entered into among Phoenix, Electrum and QIPCO in September 2018  –  years after the purchases governed by the SPAs  – to exchange the Nike and the Alexander Head for a group of six antiquities owned by Phoenix, five of which (the "Exchange Items") were located in New York. The Action involves the damages suffered by Plaintiffs, in excess of $10 million, arising from (i) QIPCO's failure to perform its obligations under the Exchange Agreement by refusing to deliver the Nike and Alexander Head to Plaintiffs despite having agreed to accept the Exchange Items; and (ii) the reckless and fraudulent conduct by QIPCO and its freight forwarders, which violated United States export laws, in omitting

critically important information, previously provided in writing by the Plaintiffs, from shipping documents accompanying the export of the Exchange Items from the US and their importation into the UK, causing those objects to be detained by the US Government for years. None of that involves or implicates the SPAs. QIPCO is essentially arguing that the Nike and Alexander SPA's should govern the dispute over and disposition of the six Exchange Items, which makes no sense.

The Exchange Agreement was formed through the parties' written correspondence in September 2018 and their actions in furtherance of their contract, including (i) Plaintiffs' tender of delivery of the Exchange Items in New York to QIPCO's representative; (ii) QIPCO's acceptance of such tender and undertaking to export the Exchange Items to the UK; and (iii) actual export of the Exchange Items, albeit with botched paperwork. The Exchange Agreement includes no agreement between the parties as to forum selection or choice of law. Plaintiffs would never have agreed to the exclusive jurisdiction of English courts or the applicability of English law to any dispute arising out of the Exchange Agreement for the critical reason that, of the five Exchange Items to be shipped from New York to London, two were of "Pre-Achaemenid," *i.e.*, probable Iranian, origin, and thus subject to strict United States import restrictions and export regulations mandating proper declarations. Failure to comply with those requirements would have serious consequences jeopardizing the Exchange transaction and result in significant financial losses. After QIPCO insisted on taking control of the shipping arrangements for the export of the Exchange Items from the US, Phoenix and Electrum faced the risk that QIPCO and its freight forwarders would fail to make the required declarations and cause Phoenix and Electrum to suffer serious losses, which is exactly what happened. Plaintiffs would not have consented to any requirement that they seek redress against QIPCO in the UK for violating US law.

Instead, New York is the appropriate forum for the parties' disputes in the Action. The Exchange Agreement was entered into and performed in New York, with Electrum, based in New York, negotiating the terms of that agreement for the Plaintiffs, concerning the Exchange Items, which were in New York. QIPCO's agent was based in New York, viewed the Exchange Items in New York and agreed to the exchange on QIPCO's behalf at Electrum's gallery in New York. Electrum tendered delivery of the Exchange Items to QIPCO in New York, upon which QIPCO's freight forwarder traveled from London to New York to oversee the collection and export of the Exchange Items from New York to London and engaged a local US shipper to do so. New York law is clear that the construction and validity of a contract is governed by the laws of the place where it was made unless the parties agree otherwise. *E.g.*, *Auten v. Auten*, 308 N.Y. 155, 160-61 (1954). Accordingly, New York law should govern the Exchange Agreement.

QIPCO's reliance on the SPAs in its pre-motion letter contradicts its arguments supporting its pending application in UK court for an anti-suit injunction against this Action. QIPCO's central contention to the UK court is that Plaintiffs are bound by a forum selection clause in yet a different agreement, an unsigned draft "Deed of Exchange" – rather than the SPAs – that purportedly governed the parties' trade of the Exchange Items for the Nike and the Alexander Head and required disputes to be brought before UK courts. However, as QIPCO acknowledges, there is no evidence that the "Deed of Exchange" was ever sent or otherwise brought to Plaintiffs' attention, much less agreed upon by Plaintiffs, who have denied, in sworn statements, receiving or knowing of the "Deed of Exchange." As Plaintiffs contend in opposition

to the anti-suit injunction application, that renders the "Deed of Exchange," as well as its forum selection clause, unenforceable under New York law. *See*, *e.g.*, *One Step Up v. KMART Corp.*, No. 97 Civ. 1469, 1997 U.S. Dist. LEXIS 9897, at *8 (S.D.N.Y. July 11, 1997) (declining to enforce forum selection clause where party advocating in favor of clause was unable to establish that the other party had consented to the agreement containing clause). Thus, it is not surprising that QIPCO makes no mention of the "Deed of Exchange" in its pre-motion letter and relies instead on the SPAs, whose relationship to Plaintiffs' claims in this Action is irrelevant.

## The Fraud Claim Should Be Sustained

QIPCO asserts that Plaintiffs' fraud claim sets forth no misrepresentation by QIPCO to Plaintiffs. It is well-settled, however, that "the doctrine of third-party reliance permits the plaintiff to show that a third-party relied upon a misrepresentation by the defendant, which resulted in injury to the plaintiff." *Good Luck Prod. Co. v. Crystal Cove Seafood Corp.*, 60 F. Supp. 3d 365,376 (E.D.N.Y. 2014). The Complaint alleges that QIPCO, with and through its freight forwarder agents, made fraudulent declarations to a third party, the US Government, which caused damage to Plaintiffs. QIPCO and its agents assumed the responsibility of creating the export documentation and declaring the Exchange Items to the US Government upon exportr, which was collateral to its contractual obligations under the Exchange Agreement to deliver the Nike and Alexander Head to London to complete the Exchange. But the commercial invoice used by Defendants omitted critical information about the "Pre-Achaemenid" origin of two of the Exchange Items that Plaintiffs had previously provided to QIPCO in writing several times and thus induced US Government officials to permit the export of the Exchange Items to London in violation of US law. That export placed Plaintiffs in a legally compromised position that forced them to engage in a long, expensive dispute with Customs Border Protection and Immigration and Customs Enforcement to challenge the seizure and detention of the Exchange Items.

## The Court Should Not Stay Discovery

Plaintiffs oppose QIPCO's request for a stay of discovery. QIPCO's reliance on the forum selection clauses in two contracts with no applicability to the Action and its legally flawed contention in support of its anti-suit injunction in the UK that Plaintiffs should be held to a forum selection clause in a different document in draft form they never saw, much less agreed to, as discussed above, does not constitute "good cause" for a stay of discovery.

Respectfully submitted,

_____s/ Michael McCullough_____
Michael McCullough


cc:    All counsel of record (via ECF)