# Pearlstein & McCullough LLP

641 Lexington Avenue ⬜ 13th floor ⬜ New York, NY 10022 ⬜ T: 646.762.7264 ⬜ F: 866.941.7720 ⬜ mmccullough@pmcounsel.com

BY ECF                                                             May 25, 2024
Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007


Re: *Phoenix Ancient Art, S.A. v. Qatar Investment and Project Holding Co., W.L.L. et al.* (24cv01699)(GHW)

Dear Judge Woods:

　　We represent Plaintiffs Phoenix Ancient Art, S.A. ("*Phoenix*") and Petrarch LLC dba Electrum ("*Electrum*") in the above-referenced action (the "*Action*"). We respond to the May 20, 2024 letter to the Court from counsel for Defendant Phoenix Freight Inc. dba Door to Door Fine Art Services ("*DTD*") [ECF No. 39] requesting a pre-motion conference regarding a proposed motion to dismiss Plaintiffs' claims in its First Amended Complaint ("*Complaint*" or "*Compl.*"). We oppose the proposed motion.


**The Montreal Convention Does Not Apply.** DTD's reliance on the Montreal Convention (the "*Convention*") rests upon a mistaken application of the Convention to Plaintiffs' fraud claim.

　　DTD's liability to the Plaintiffs arises out of a master air waybill issued by DTD ("DTD Waybill") that was the contract of carriage for the conveyance of the Shipped Items from Plaintiffs' gallery in New York to Superfreight's offices in Central London. The Complaint alleges that QIPCO, Superfreight, and DTD fraudulently and recklessly omitted from Plaintiffs' their intention to substitute an accurate commercial invoice provided by Plaintiffs, which was referenced on the DTD Waybill, with a fraudulent invoice that omitted the correct country of origin of the Shipped Items that was used as the basis of the export declaration to the US government and the import declaration to the UK government.

　　DTD relies on two cases that did not involve air cargo carriage under the Convention to support its argument that "Plaintiff's claim…[is] barred by the Montreal Convention, which limits the liability of freight forwarders for loss, damage or delay to a specific and limited number of dollars per kilogram." *Allianz Global Corporate & Specialty v. MSC "Monterey"*, 2014 U.S. Dist. LEXIS 130438 was a case of ocean carriage under the Court's admiralty jurisdiction, 28 U.S.C. § 1333(1) and 28 U.S.C. § 1367(a), and not air carriage under the Convention. *Id.,* at *1-2. Likewise, *ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, is a case that involved the transport by truck of cargo from JFK Airport to Huntington Station, New York and not air carriage under the Convention. *Id.*, at 89.

　　 Plaintiff's fraud claim, however, arises out of neither an international air carriage nor loss, damage, or delay in carriage. DTD's fraud occurred *before* the Shipped Items (identified in Compl., ¶¶2-4) were collected by DTD on September 11, 2018. Plaintiffs allege that: i) Superfreight, a company owned by Simon Jones, omitted to inform them of its intent to mis-declare the Shipped Items on the commercial invoice that Superfreight, on behalf of its principal, QIPCO, provided to DTD to accompany the export from the US (the "Simon Jones Invoice"), forming the basis of a false export declaration to the US government; and 2) DTD produced the DTD Waybill which indicated that the accurate commercial invoice provided by Plaintiff Phoenix (the "Phoenix Ancient Art Invoice") was attached but instead DTD attached the fraudulent Simon Jones Invoice and presented that fraudulent document through a false export declaration to the US Government (together, the "*Omission*"). (Compl., ¶37). The Omission occurred in the course of interactions between Plaintiff Electrum's manager, Alexander Gherardi, Simon Jones, and a DTD representative on September 6-10, 2018. (Compl.,¶¶34-37). Specifically, Superfreight and DTD failed to disclose to Plaintiffs that they did not intend to use the Phoenix Ancient Art Invoice, but rather the fraudulent Simon Jones Invoice created by Mr. Jones on

September 6, 2018 that, critically, omitted any description of country of origin of the Shipped Items, such as "Pre-Achaemenid," "Greek" or "Roman." Because the Omission happened *before* the Shipped Items were collected by DTD and the ensuing damage had nothing to do with the actual shipment, the fraud claim is not based upon an international air carriage. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 171, 119 S. Ct. 662, 142 L. Ed. 2d 576 (1999) ("The Convention's preemptive effect on local law extends no further than the Convention's own substantive scope. A carrier, therefore, is indisputably subject to liability under local law for… injuries occurring before any of the operations of embarking or disembarking.").

Next, the fraud claim does not seek damages due to a delay in carriage. Article 19 covers damages "occasioned by delay." 2242 U.N.T.S. at 356. *See Benjamin v. Am. Airlines, Inc.*, 32 F. Supp. 3d 1309, 1317 (S.D. Ga. 2014) ("By its plain language, Article 19 governs only claims for delay."). Generally speaking, "[t]he cases consider 'delay' under Article 19 to mean that the air carrier properly delivered . . . persons [or baggage or cargo] to the appropriate destination but it did so in an untimely manner." *Vumbaca v. Terminal One Group Ass'n*, 859 F. Supp. 2d 343, 366 (E.D.N.Y. 2012). "[T]he plain language of Article 19 . . . indicates that it governs claims for delay, not non[-]performance." *Salamey v. Am. Airlines, Inc.*, No. 8:11-cv-2354-T-23MAP, 2011 U.S. Dist. LEXIS 129819, *3 (M.D. Fla. Nov. 9, 2011) (citation omitted). In the present case, Plaintiff's fraud claim alleges non-performance rather than delay.  The DTD Waybill shows that the contract for carriage was from Electrum's gallery in New York to Superfreight's offices in Central London. The Shipped Items were stopped by HMRC, detained, and were *never delivered* to Superfreight's London office, their ultimate destination. Thus, the contract for carriage was not performed and this is not a case of delay. Plaintiffs' fraud claim is not encompassed by Article 19 of the Convention. (*See Wolgel v. Mexicana Airlines*, 821 F.2d 442, 444 (7th Cir. 1987) (plaintiffs' claim for nonperformance was outside Article 19's substantive scope under Article 19 and therefore not preempted). *See also, El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 171, 119 S. Ct. 662, 142 L. Ed. 2d 576 (1999) ("The Convention's preemptive effect on local law extends no further than the Convention's own substantive scope. A carrier, therefore, is indisputably subject to liability under local law for injuries arising outside of that scope: e.g., for injuries occurring before any of the operations of embarking or disembarking.")

Lastly, under Article 19, "the carrier must prove that it took 'all precautions that in sum are appropriate to the risk, *i.e.*, measures reasonably available to defendant and reasonable calculated, in cumulation, to prevent the subject loss.'" *Rambarran v. Dynamic Airways, LLC*, 14-cv-10138, 2015 U.S. Dist. LEXIS 123762, *2 (S.D.N.Y. Sept. 16, 2015)(citation omitted). Passing a false invoice through two Customs services leading to mis-declarations made to those agencies is hardly a reasonable act of precaution.

**Even If the Convention Does Apply, DTDs Statute of Limitations Argument is Unavailing**. DTD argues that claims made pursuant to the Convention are subject to a two-year statute of limitations. Convention, Art. 35 § 1. Specifically, the Treaty states that "[t]he right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." *Id*. Because liability under the Convention applies to "passengers, baggage, and cargo" the statute of limitation encompasses occasions of delay in arrival of the plane or non-arrival of the aircraft. *Zurich Versicherungs Gesellschaft AG A/S/O Adidas Int'l Trading AG v. China E. Airlines Co. Ltd.*, 2024 U.S. Dist. LEXIS 6215, *1 (EDNY 2024), a case from January of this year, is the first federal case to address the question of when carriage stops under the Convention in a case involving alleged cargo damage. *Id*. at *5 (footnote 1). This case is inapplicable to this Action because DTD

2

alleges delay rather than damage. Moreover, it is clear that Plaintiffs' claim is timely. In this Action, the Shipped Items were finally returned to Plaintiffs on October 12, 2023. (Compl., ¶44). When an air waybill provides for door-to-door delivery, the period of carriage by air generally lasts until the recipient receives the goods. *Danner v. Int'l Freight Sys. of Wash*., LLC, 2010 U.S. Dist. LEXIS 86024, *14. Here, the consignee, Superfreight never received the Shipped Item at the destination in Central London; and the consignor, Phoenix received full return of the Shipped Items in New York in October 2023, well within the two-year statute of limitations.

**If the Convention Does Apply, DTDs is Liable To Plaintiffs Under Article 10**. Article 10 — "Responsibility for Particulars of Documentation," establishes: "3. Subject to the provisions of paragraphs 1 and 2 of this Article, the carrier shall indemnify the consignor against all damage suffered by it, or by any other person to whom the consignor is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements inserted by the carrier or on its behalf in the cargo receipt or in the record preserved by the other means referred to in paragraph 2 of Article 4." *We CBD, LLC v. Planet Nine Private Air, LLC*, 2023 U.S. Dist. LEXIS 102029, *31-32. Thus, DTD has liability under the Convention to its consignor, Plaintiffs for the mis-declaration of the country of origin information to the US Government.

**Plaintiffs Have Alleged A Viable Fraud Claim**. With respect to the pleading of their fraud claim, Plaintiffs set forth the reasons they have stated a viable claim. Under New York law, the elements of a fraud cause of action consist of "a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" *Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 (2011).

       As discussed above, Plaintiffs' fraud claim is based on the Omission, which induced Plaintiffs to allow the Defendants to control the export of the Shipped Items. Plaintiffs deferred to the Defendants to "expedite" the export of the Shipped Items and relied on the extensive experience and expertise of Superfreight and DTD in the international shipping antiquities. Plaintiffs reasonably expected that Superfreight and DTD would manage the shipment in full compliance with applicable US and UK law. Plaintiffs justifiably relied upon the Omission by agreeing to appoint DTD as its agent for filing the export declaration. Although Phoenix provided Superfreight and DTD with reasonable and customary paperwork concerning the Shipped Items' origin, it had no reason to doubt that DTD would act in a commercially reasonable manner in filing the export declaration. Plaintiffs did not know or have reason to believe that Superfreight would provide DTD with the fraudulent export invoice and that DTD would present the fraudulent invoice to the US Government through a false export declaration. As a result, Plaintiffs were injured in the amount of $10,179,407. (*See generally* Compl., ¶¶60-65).

                                  Respectfully submitted,

                                  /s/ Michael McCullough
                                  Michael McCullough

cc:      All counsel of record (via ECF)